JH

FILED
DEC 12 2007
Judge George W. Lindberg
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 CR 346 |
| vs. ) | Judge George W. Lindberg |
| ) | |
| ROBERT HENRY ) | |

## PLEA AGREEMENT

1.  This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant ROBERT HENRY, and his attorney, PAUL BRAYMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.  The superseding information in this case charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341.

3.  Defendant has read the charge against him contained in the superseding information, and that charge has been fully explained to him by his attorney.

4.  Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.  By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the superseding information. The superseding information charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341.

## Factual Basis

6.  Defendant will plead guilty because he is in fact guilty of the charge contained in the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Defendant ROBERT HENRY was a retired Supervising Sanitarian in the Chicago Department of Public Health ("CDPH") Food Protection Division. As a Supervising Sanitarian, HENRY's primary duties were to conduct inspections of food establishments in accordance with the City Municipal Code.

From at least March 2005 through May 2007, in Cook County, in the Northern District of Illinois, and elsewhere, ROBERT HENRY, and co-defendant Maryanne Koll, intended to devise, and participated in a scheme to defraud and to obtain property owned by the State of Illinois and the Illinois Department of Public Health ("IDPH") by means of materially false and fraudulent pretenses, representations, and promises. Maryanne Koll and ROBERT HENRY fraudulently obtained Sanitation Certificate Exam Books and other exam-related materials from the IDPH in furtherance of their joint venture to procure IDPH Sanitation Certificates from the State of Illinois for individuals who had not attended an IDPH-approved Sanitation Certificate course and who had not passed an IDPH-approved Sanitation Certificate exam. In order to obtain the Sanitation Certificate Exam Books and other exam-related materials from the IDPH, Maryanne Koll and ROBERT HENRY made and caused to be made a series of materially false and fraudulent representations and

promises to IDPH with regard to the attendance and teaching of classes and the administration of Sanitation Certificate exams.

Maryanne Koll and ROBERT HENRY ensured that these individuals would pass the course necessary to obtain a Illinois Sanitation Certificate. In exchange for fraudulently arranging to provide State of Illinois and City of Chicago Sanitation Certificates, these individuals paid money to Maryanne Koll and ROBERT HENRY. As a result of the actions of Maryanne Koll and ROBERT HENRY, individuals who were not entitled to receive State of Illinois and City of Chicago Sanitation Certificates received such Sanitation Certificates via United States mail, thereby entitling the individuals to prepare and serve food to the public while working in food establishments.

Beginning no later than about 2005, Maryanne Koll was an IDPH-approved instructor who held herself out as conducting courses for State of Illinois Food Service Sanitation Manager Certificates through her business, Kollmar Food Safety Institute. During this time, Maryanne Koll and ROBERT HENRY generated and used "enrollment receipts," purportedly for the purpose of certifying that an individual was enrolled in an upcoming Sanitation Certificate course. Koll sometimes generated backdated "enrollment receipts" purportedly certifying that the individual had already attended the Sanitation Certificate course and taken the exam and was awaiting receipt of his Sanitation Certificate. Koll signed the "enrollment receipts" which contained Koll's Food Service Manager Certificate number and the name and address of Kollmar Food Safety. These "enrollment receipts" were

typically for Sanitation Certificate courses that Koll had already scheduled with the IDPH by submitting a Course Date Notification form. When ROBERT HENRY "enrolled" a new client, he had the applicant partially complete an Answer Sheet previously supplied to HENRY by Maryanne Koll. Under the direction of HENRY, the applicant completed the sections that requested the applicant's name, address, and social security number and then signed and initialed the Answer Sheet without filling in the answers. ROBERT HENRY "enrolled" these individuals in one of Maryanne Koll's Sanitation Certificate "courses" for a fee of $300 to $400. After ROBERT HENRY received the $300 to $400 fee, he provided the applicant with one of the "enrollment receipts" previously supplied to him by Maryanne Koll. HENRY wrote in the name of the applicant on the "enrollment receipt" if Koll had not already done so. At Maryanne Koll's direction, ROBERT HENRY instructed the applicant that if anyone asked where the applicant attended the Sanitation Certificate course and exam, the applicant should say he or she attended the course and exam at a specific location on Narragansett Avenue on the northwest side of Chicago.

ROBERT HENRY then contacted Maryanne Koll when HENRY had accumulated several individuals to "enroll" in her Sanitation Certificate "course." HENRY met frequently with Maryanne Koll to obtain Answer Sheets and "enrollment receipts" to distribute to potential Sanitation Certificate applicants, whom he obtained on a referral basis, and to provide Koll names of applicants and their money. ROBERT HENRY gave Maryanne Koll the incomplete Answer Sheets and one-half of the money paid to HENRY. HENRY knew

that those applicants would fraudulently receive Illinois Sanitation Certificates.

About every four to eight weeks, Maryanne Koll and ROBERT HENRY sent and caused to be sent Course Date Notification forms to IDPH requesting a certain number of exam books and answer sheets for the scheduled exam be delivered to "Maryanne Koll, Kollmar Food, 7840 Forest Hill Road, Burr Ridge, Ill., 60527." After the scheduled Sanitation Certificate exam date, Maryanne Koll and ROBERT HENRY caused to be mailed or sent via commercial interstate carrier to IDPH completed but ungraded Answer Sheets, signed Attendance Lists, Class Enrollment Forms, and Exam Books, all of which contained a variety of false and fraudulent representations.

Each Sanitation Certificate course/exam Maryanne Koll claimed to administer between about December 2005 and about August 2006 contained at least one applicant whose name ROBERT HENRY had provided her and who did not attend the course or take the exam.

Between 2005 and 2007, ROBERT HENRY fraudulently obtained or attempted to obtain Sanitation Certificates for at least 97 individuals. Through this scheme, ROBERT HENRY caused monetary losses to IDPH and the City of Chicago; meanwhile, HENRY gained at least $14,550 for his own personal use and gave at least $14,550 to Maryanne Koll for her own personal use.

On or about August 16, 2006, in the Northern District of Illinois, Eastern Division, defendants ROBERT HENRY and Maryanne Koll, for the purpose of executing the above-

described scheme to defraud and attempting to do so, did knowingly cause to be delivered in interstate commerce by commercial interstate carrier, according to the directions thereon, a package containing 48 Exam Books from the Illinois Department of Public Health, 525 West Jefferson Street, 2nd Floor, Springfield, Illinois, to Maryanne Koll at 7840 Forest Hill Road, Burr Ridge, Illinois.

7. The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

   a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

   b. **Offense Level Calculations.**

   i. The base offense level for the charge in the superseding information is 7, pursuant to Guideline §2B1.1(a)(1);

   ii. Pursuant to Guideline § 2B1.1(b)(1)(C), the base offense level must be increased by 4 levels because the loss ($29,100) is more than $10,000, but less than $30,000.

   iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not

receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

      iv.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 1 and defendant's criminal history category is I:

On or about August 21, 1963, defendant was convicted of burglary in the Circuit Court of Cook County and was sentenced to 30 days imprisonment and two years probation. Pursuant to Guideline Section 4A1.2(e), defendant receives no criminal history point for this conviction.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 9, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 4 to 10 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines.

The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.  Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.  At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the low end of the applicable Guideline range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. The government will make no recommendation regarding the sentence to be imposed.

13.  If the government does not move the Court, pursuant to Sentencing Guideline

§5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

14. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Presentence Investigation Report/Post-Sentence Supervision

16. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government

will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

17. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the

returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 346.

20. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

21. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant.

### Waiver of Rights

22. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the superseding information, the information process, or the fact that he has been prosecuted by way of information.

b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    c.    **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

    d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Other Terms

23.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial

statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

24. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

27. Defendant and his attorney acknowledge that no threats, promises, or

representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: December 12, 2007

_____
PATRICK J. FITZGERALD
United States Attorney

_____
ROBERT HENRY
Defendant

_____
MICHELLE NASSER WEISS
Assistant U.S. Attorney

_____
PAUL BRAYMAN
Attorney for Defendant