UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 346 |
| vs. | ) | |
| | ) | Hon. George W. Lindberg |
| MARYANNE KOLL | ) | United States District Court Judge |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS INFORMATION**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits this response to Defendant Maryanne Koll's motion to dismiss the Superseding Information.

**I.     Background**

Defendant Maryanne Koll was employed as a Sanitarian II between 1994 and 2002 in the Chicago Public Health Department's Food Protection Division. She was qualified by the Illinois Department of Public Health ("IDPH") in 1995 as a state-approved instructor for Food Service Sanitation Manager Certificates. All public food service establishments in Illinois must have an individual holding a sanitation certificate on site during operation. A state-approved course consists of 15 hours of training, including instruction regarding food borne illnesses, time/temperature relationships, personal hygiene, pest control, and prevention of food contamination.

From no later than January 2003 through May 2007, defendant engaged in a fraud scheme in which she took money from individuals to fraudulently arrange to provide them with State of Illinois and City of Chicago Food Service Sanitation Manager Certificates ("FSSMC") without taking and passing the required examination. Defendant made a series of materially false and fraudulent representations and promises to IDPH with regard to the attendance, scheduled dates and times of classes, and teaching of classes and the

1

administration of Sanitation Certificate exams. Specifically, Koll misrepresented that a certain number of individuals would attend a 15-hour course on specific dates at specific locations, and that at the conclusion of the course defendant would administer the IDPH-approved sanitation certificate exam using the exam books provided to defendant by IDPH. As a result of her misrepresentations, defendant caused IDPH to ship her the exact number of Sanitation Certificate Exam Books that defendant requested, along with other exam-related materials, all of which were intended by the state to be used to test an individual's knowledge of topics relating to food service preparation and sanitation. In addition, as part of the scheme, defendant later completed or altered individuals' answers on the exams, ensuring that they would pass the course and exam to obtain a FSSMC.

In the course of her scheme, defendant fraudulently obtained Sanitation Certificates for at least 584 individuals. Through this scheme, defendant caused monetary losses to IDPH and the City of Chicago; meanwhile, defendant caused a gain to herself of at least $232,610.

On December 4, 2007, defendant was charged in a Superseding Information with one count of mail fraud, in violation of 18 United States Code, Section 1341. Defendant has filed a Motion to Dismiss the Information, alleging that the Superseding Information fails to state a charge, "in that the facts alleged, even if proven, would not constitute a violation of the mail fraud statute." Def.'s Mot. to Dismiss at 3.

**II.   Defendant is Charged with Fraudulently Obtaining Exam Materials, Not Certificates**

The defendant's motion to dismiss distorts the charges explicitly described in the Superseding Information. The Superseding Information clearly explains defendant's scheme to fraudulently obtain exam materials owned by the State of Illinois. However, defendant's entire motion – and each case cited therein – is based on a distortion that the Superseding Information charges defendant with fraudulently obtaining the actual Food Service Sanitation

2

Certificates, rather than the exam materials. Accordingly, defendant's arguments fail and her motion to dismiss should be denied.

The government's charging theory is explicitly described in paragraphs 3 and 4 of the Superseding Information:

> It was part of the scheme that defendants MARYANNE KOLL and ROBERT HENRY fraudulently obtained Sanitation Certificate Exam Books and other exam-related materials from the IDPH in furtherance of their joint venture to procure IDPH Sanitation Certificates from the State of Illinois for individuals who had not attended an IDPH-approved Sanitation Certificate course and who had not passed an IDPH-approved Sanitation Certificate exam.
>
> It was further part of the scheme that, in order to obtain the Sanitation Certificate Exam Books and other exam-related materials from the IDPH, defendants MARYANNE KOLL and ROBERT HENRY made and caused to be made a series of materially false and fraudulent representations and promises to IDPH with regard to the attendance and teaching of classes and the administration of Sanitation Certificate exams.

Sup. Inf. ¶ 3-4.

Defendant is charged with a simple property fraud scheme in which the victim is the State of Illinois and the physical property is the "Sanitation Certificate Exam Books and other exam-related materials." Sup. Inf. ¶ 3. Defendant is not charged in a scheme where the IDPH Sanitation Certificates themselves constitute the property. As such, the government is not "relying on Koll's acquisition of IDPH Sanitation Certificates from the State on behalf of a number of applicants," as implicating a property right. Def.'s Mot. to Dismiss at 4. *Id*. at 5 (" . . . to the extent the government claims that the property obtained by Koll were the Sanitation Certificates . . . the Superseding Information fails to state a charge to the extent it relies on the Sanitation Certificates as property obtained by Koll.")

Following the statutory language of 18 United States Code, Section 1341, defendant devised, intended to devise, and participated in a scheme to defraud IDPH and to obtain

property (exam booklets, and exam questions and answers) by means of materially false and fraudulent pretenses, representations, and promises (misrepresentations on Course Date Notification Forms that defendant would conduct classes and administer exams to certain individuals on certain dates and at certain locations), and in furtherance of the fraudulent scheme, caused something (e.g., Course Date Notification Forms and exam books) to be deposited in U.S. Mail. Because the Superseding Information clearly states a charge, defendant's motion to dismiss should be denied.

### III. The IDPH Exam Materials Are Property of the State of Illinois

In her motion to dismiss, defendant concedes the fact that, "as alleged in the Superseding Information, the exam books and other exam-related material obtained by Koll in relation to the alleged scheme were and remained the property of the State." Def.'s Mot. to Dismiss at 2. Defendant is correct that, for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim. *United States v. Hedaithy*, 392 F.3d 580, 592-93 (3rd Cir. 2004). In addition, the government need not allege that the victim suffered a monetary loss. *Id.* at 595. Defendant attempts to downplay the significance of the IDPH exam-materials to the scheme by labeling them "the sundry documents interrelated with the licensing process." (Def.'s Mot. to Dismiss at 8). However, as set forth in the Superseding Information, the state's multiple written notices reveal that the exam materials constitute valuable property to the State of Illinois:

> h.   The Sanitation Certificate Exam Books were the exclusive property of the State of Illinois, and were intended by the IDPH to be used for the specific purpose of testing an individual's knowledge of topics relating to food service, preparation, and sanitation. The front cover of the exam book and the bottom of each page in the exam books stated in bold letters: "THIS BOOKLET IS THE PROPERTY OF THE STATE OF ILLINOIS."
>
> i.   The IDPH Food Service Sanitation Manager Certification ("FSSMC") Exam Monitoring Procedure

4

instructed, "The Department shall revoke permission to serve as a Monitor in the event of . . . repeated failure to return exams within ten days, . . . and duplicating test materials. All examinations must be stored, transported and administered under secure conditions. They must be inventoried prior to and immediately following each administration of the examination. 'Secured' means that access to the examination is essentially limited to the Monitor of the examination or an agent of the Department. The State of Illinois Food Service Sanitation Manager Certification exam may not be out of the Department for more than 10 day[s] unless otherwise approved by the Department. Exams must be returned by Certified or Priority Mail, a parcel delivery service or hand delivered."

     j.    The IDPH FSSMC Instructor Procedures directed at #13, "CONFIDENTIALITY. All documentation pertaining to the preparation, testing and grading of the State of Illinois Food Service Sanitation Manager Certification program is confidential and shall not be disclosed, copied or provided to anyone directly or indirectly without the express permission of the Illinois Department of Public Health. All such materials are the exclusive property of the State of Illinois."

     k.    To become an IDPH-approved instructor, KOLL signed an IDPH Instructor/Monitor Non-Disclosure Agreement, which read, "I understand and agree that all examination questions received from the Illinois Department of Public Health are and shall remain the exclusive property of IDPH and shall not be disclosed in any manner. I hearby swear and affirm that while teaching and monitoring exams for the Food Service Sanitation Manager Certification program I will not provide, directly or indirectly, to any student or any other individual, information regarding examination questions, answers to examination questions or assistance in answering examination questions."

     l.    To become an IDPH-approved instructor, KOLL signed an Affidavit of Non-Disclosure which read, "I have not and will not provide to the examinee, directly or indirectly, any answers to the examination. It is understood that all examination questions received from the Illinois Department of Public Health are and shall remain the exclusive property of IDPH and shall not be disclosed in any manner."

Sup. Inf. at ¶ 1.

5

### IV. Defendant Obtained IDPH Exam Materials Through Fraud and Misrepresentations

Defendant obtained IDPH exam materials through fraud and misrepresentations she made on Course Date Notification Forms. As alleged in the first paragraph of the Superseding Information,

> n. . . . To schedule a Sanitation Certificate course or exam, an instructor was required to provide notice to the IDPH thirty days before the exam was to be administered. The instructor sent the IDPH a Course Date Notification form, in which the instructor stated the number of Sanitation Certificate exams he or she would administer at a designated place and time and requested the number of Exam Books and Answer Sheets required to administer that exam.
>
> o. Once the IDPH received the Course Date Notification form from the instructor, the IDPH sent via United States mail or commercial interstate carrier to the instructor the requested number of Exam Books and Answer Sheets as well as an Examination Materials form, identifying which Exam Books had been included in the package by both Exam Version Number and Exam Book Number.

Sup. Inf. at ¶1. The Superseding Information itemizes defendants' misrepresentations:

> 8. It was further part of the scheme that defendants MARYANNE KOLL and ROBERT HENRY submitted and caused to be submitted Course Date Notification forms to the IDPH which contained a variety of false and fraudulent representations, such as the following:
>
> a. That defendant MARYANNE KOLL would conduct a 15-hour IDPH-approved Sanitation Certificate course at a designated location on a specific date and time.
>
> b. That a certain number of students would attend defendant MARYANNE KOLL's 15-hour IDPH-approved Sanitation Certificate course on that date.
>
> c. That, at the conclusion of the 15-hour IDPH-approved Sanitation Certificate course, defendant MARYANNE KOLL would administer the IDPH-approved Sanitation certificate exam using the Exam Books provided to her by IDPH.
>
> 9. It was further part of the scheme that about every

>four to eight weeks defendants MARYANNE KOLL and ROBERT HENRY sent and caused to be sent Course Date Notification forms to IDPH requesting a certain number of exam books and answer sheets for the scheduled exam be delivered to "Maryanne Koll, Kollmar Food, 7840 Forest Hill Road, Burr Ridge, Ill., 60527."
>
>10.     It was further part of the scheme that in response to the Course Date Notification forms, the IDPH sent KOLL via commercial interstate carrier United Parcel Service ("UPS"), Examination Materials forms and the requested Sanitation Certificate Answer Sheets and Exam Books to be used for the Sanitation Certificate exam KOLL purportedly scheduled for specific dates.

Sup. Inf. at ¶8.

It is undeniable that once she fraudulently obtained IDPH exam materials, defendant made additional misrepresentations on the exam materials themselves, misrepresentations that caused additional mailings from the state in furtherance of her scheme and which resulted in the issuance of food sanitation certificates. However, this case centers around Koll's misrepresentations to obtain exam materials, not Koll's misrepresentations within the exam materials themselves once she fraudulently obtained them. Simply put, Koll deceived the state to obtain the state's exam materials – as properly alleged in the Superseding Information – and her motion should be denied.

### V.     Exam Materials Constitute Property as a Matter of Law Under 18 U.S.C. § 1341

This theory of exam materials as property is supported by case law in this Circuit as well as various other circuits. For example, in *United States v. Toulabi*, 875 F.2d 122 (7th Cir. 1989), the Seventh Circuit found that an exam is "property" for purposes of mail/wire fraud. *Toulabi* involved fraud to obtain taxi driver examinations. To drive a taxi in Chicago at the time, a person needed to pay a fee of $50 and answer correctly 20 out of 25 questions on a test of local geography. *Id.* "An aspirant alternatively could pay between $350 and $600 to Reza Toulabi, whose henchmen in the Division of Public Vehicle Operations would

7

furnish the would-be cabbie with the answers to the quiz." *Id.* The mail was used to send the licenses to the clients. The Seventh Circuit found that the indictment stated an offense under §1341, and compared the case to *Carpenter v. Untied States*, 484 U.S. 19 (1987), which involved the Wall Street Journal, stating,

> Just as a newspaper may have a property interest in information about the stock market, . . . so the City of Chicago may have a property interest in its test for hacks. Confidentiality may be important to the integrity of the licensure program, just as holding the contents of its columns confidential until publication may be important to the integrity of the Wall Street Journal's reportage, which affects its profitability. Unlike the Journal, which sells papers, the City does not sell tests. Nonetheless, it had an investment in the test. Once the information got out the City may have had to design a new test, at some expense. . . . Tests are not free goods; many services keep their tests secure and charge stiff fees for writing one.

*Id.* at 125.

Similarly, in *United States v. Hedaithy*, the 3rd Circuit ruled that Educational Testing Service ("ETS") had a property interest cognizable under the mail fraud statute in its confidential business information embodied in standardized tests that measured English proficiency of foreign students. *Hedaithy*, 392 F.3d at 595. In *Hedaithy*, imposters were paid to sit for the Test of English as a Foreign Language ("TOEFL"), a standardized test administered by ETS. *Id.* at 582. The Third Circuit explained that ETS,

> goes to great lengths to protect the confidentiality and exclusivity of its exam. No person is permitted access to sit for the TOEFL exam unless he pays a fee, promises to reserve the confidentiality of the exam, and represents to ETS that he is the person whose name and address were used in applying to sit for the exam. The facts alleged in the superseding indictment are therefore sufficient to conclude that the TOEFL exam and its questions were confidential business information.

*Id.* at 594. The Court further explained that the Government need not allege that ETS suffered a monetary loss. *Id.* at 595 (citing *Carpenter*, 484 U.S. at 26). Rather, for purposes of showing a mail fraud violation, it is sufficient to allege that ETS "has been deprived of its

8

right to exclusive use of the [confidential business] information." *Carpenter*, 484 U.S. at 26-27. The Court found that because the hired test-takers falsely identified themselves and misrepresented to ETS their true identities, "the superseding indictments sufficiently alleged that the deprivation of ETS's property right was accomplished through deceit, trickery, chicanery, or other fraudulent means." *Hedaithy*, 392 F.3d at 595. The *Hedaithy* Court went on to explain,

> ETS requires each person who sits for the TOEFL exam, in accordance with the confidentiality statement, to undertake a continuing obligation to keep the exam confidential. The hired test-takers, however, did not sign the confidentiality statement in their own names and were therefore not bound by the same obligations that legitimate test-takers agreed to. After the alleged scheme was complete, therefore, the TOEFL exam was no longer confidential vis-a-vis the hired test takers.

*Id.* at 595.

Each case defendant cites in her motion to dismiss readily distinguishable from the case at bar because the pivotal issue in each of those cases was whether the acquisition of a paper certificate or license constituted a violation of mail fraud. *Cf. Cleveland v. United States*, 531 U.S. 12 (2000) (video poker licenses not property); *United States v. Kato*, 878 F.2d 267 (9th Cir. 1989) (FAA pilot licenses/certificates not property); *United States v. Shotts*, 145 F.3d 1289, 1297 (11th Cir. 1998) (license to operate a bail bonds business not property).[1] As set forth above, in stark contrast to the cases cited by defendant, the

---

[1] In a parenthetical, defendant erroneously summarizes *Shotts* as standing for the proposition that "use of mail in fraudulently obtaining bail bondsman license renewal notices, completing and submitting them with checks and the delivery of the licenses themselves did not constitute the federal crime of mail fraud." Def.'s Mot. to Dismiss at 9-10. A cursory reading of *Shotts* reveals that defendant's emphasis on fraudulently obtaining license renewal notices (as opposed to the actual licenses) is misplaced. The court in *Shotts* clearly held that "a municipal license to operate a bail bonds business is not government property, either before or after being typed." *Shotts*, 145 F.3d at 1297. The renewal notice was significant in *Shotts* not because it constituted the alleged property right, but rather because the renewal notice constituted the mailing: "All of the substantive mail fraud counts allege either the mailing of a bail bond license renewal

9

government is far from alleging that "blank sheets of paper in the form of unissued certificates" constituted the property in Koll's scheme to defraud. *Kato*, 878 F.2d at 269.

Defendant also attempts a strained and unsupported argument that the exam materials cannot constitute property because defendant did not permanently keep all the exam materials. Def.'s Mot. to Dismiss at 6-7. Defendant cites no case law supporting her assertion that the "provisional loan" or "temporary relinquishment" of property does not constitute a property right. *Id*. In lieu of case law, defendant offers a faulty analogy to a false statement in a driver's license renewal application, an analogy which again misses the point that the sanitation certificate itself is not the property right alleged in the Superseding Information. Def.'s Mot. to Dismiss at 9. Defendant's strained argument fails for the additional reason that it relies upon a factual misconception that Koll in fact returned all the state's exam materials "as required and expected." Def.'s Mot. to Dismiss at 9. As defendant well knows, defendant did not return the exam materials back to the state as required. To the contrary, she provided the IDPH exam material to her co-defendant, Robert Henry, and she also stored exam materials at her house. Reams of exam booklets, exam answers, and other exam materials were recovered in the search of Koll's home on June 5, 2007. These materials include originals and/or photocopies of IDPH FSSMC exam booklets including various exam versions 96-4, 96-5, 99-9, IL2000-1, 06-2, 06-4, 06-5, and FSSMC Recertification Exams. Law enforcement also recovered photocopies of completed FSSMC scantrons and Koll's handwritten FSSMC grading sheets. Some of the scantrons contained handwritten explanations next to answers. Also recovered on June 5, 2007, was a box containing IDPH exam books and partially-completed scantrons for an exam scheduled for June 11, 2007 – at least two witnesses reported that they attended defendant's abbreviated

---

notice with a check or the receipt back in the mail of the license itself." *Id*. at 1292.

FSSMC class on June 4, 2007, and that defendant did not require them to take an exam because she claimed she had not yet received the very exam materials that were found in her house. The Superseding Information certainly does not allege that "Koll complied with the State's requirements and returned the exam books and other testing material as mandated." Def.'s Mot. to Dismiss at 1-2.

To the extent defendant argues that, "there is no allegation in the Superseding Information that Koll did not comply with this requirement" to return exam materials to the state within ten days of the examination, such argument does not sustain her motion to dismiss. It has long been held by both the United States Supreme Court and the Seventh Circuit that a motion to dismiss an indictment may not be based on an insufficiency of evidence claim. *United States v. Calandra*, 414 U.S. 338, 345 (1974) ("an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence"); *United States v. Costello*, 350 U.S. 359, 363 (1956) (same); *United States v. Taylor*, 154 F.3d 675, 681 (7th Cir. 1998). *See also United States v. Gilpin*, 678 F.Supp. 1361, 1364 (N.D.Ill. 1988) ("an indictment sufficient on its face cannot be successfully challenged on the basis that the government may not meet its burden of proof"). If a particular offense has been sufficiently charged, a motion to dismiss the indictment must be denied. *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989). An indictment is sufficiently charged if it (1) states all the elements of the charged offense; (2) informs the defendant of the nature of the charges; and (3) allows the defendant "to plead the judgment as the bar to any later prosecution for the same offense." *United States v. Serola*, 767 F.2d 364, 369 (7th Cir. 1985).

The superseding indictment sufficiently alleges that the deprivation of the State of Illinois' property right in exam materials was accomplished through fraudulent means. Because the indictment in this case sufficiently charges the elements of mail fraud and

11

notifies defendant of the nature of the charges against her, her motion to dismiss the superseding indictment must be denied.

## VI. Conclusion

For the reasons stated above, the government respectfully requests that this Court deny defendant's motion to dismiss the Superseding Information.

                                                 Respectfully submitted,

                                                 PATRICK J. FITZGERALD
                                                 United States Attorney

Dated: January 16, 2008

                                     By:   /s/   Michelle Nasser Weiss
                                                 MICHELLE NASSER WEISS
                                               TINOS DIAMANTATOS
                                               Assistant United States Attorneys
                                               219 South Dearborn Street
                                               5th Floor
                                               Chicago, Illinois 60604
                                               (312) 469-6201

**CERTIFICATE OF SERVICE**

Michelle Nasser Weiss, an Assistant United States Attorney assigned to the instant matter, hereby certifies that the attached **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INFORMATION** was served on January 16, 2008, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers, and served by first class mail, postage prepaid, on the following party:

John A. Meyer, Esq.
*Counsel for Defendant Maryanne Koll*
20 South Clark Street
Suite 2210
Chicago, IL 60603

        By:   /s/   Michelle Nasser Weiss
             MICHELLE NASSER WEISS
             Assistant United States Attorney
             219 South Dearborn Street
             5th Floor
             Chicago, Illinois 60604
             (312) 469-6201